In the Matter of NEW YORK WATER SERVICE CORPORATION, Respondent, against WATER POWER AND CONTROL COMMISSION OF THE STATE OF NEW YORK, Appellant.

(Application No. 1286.)

Argued March 13, 1940; decided April 23, 1940.

*John J. Bennett, Jr., Attorney-General (Timothy F. Cohan, Henry Epstein* and *Jack Goodman* of counsel), for appellant. There are sufficient findings of fact in the record to sustain the determination of the Commission. (*Matter of Elite Dairy Products, Inc.,* v. *Ten Eyck,* 271 N. Y. 488.) The determination of the Commission is supported by sufficient competent proof. (*Niagara Falls Power Co.* v. *Water Power & Control Comm.,* 267 N. Y. 265; *People ex rel. N. Y. & Queens Gas Co.* v. *McCall,* 219 N. Y. 84.)

*George R. Fearon* and *M. Harold Dwyer* for respondent. The first question certified, viz., " Are there sufficient findings of fact to sustain the determination?" should be answered in the negative. (*People ex rel. Long* v. *Whitney,* 143 App. Div. 17; *Interstate Circuit* v. *United States,* 304 U. S. 55; *United States* v. *B. & O. R. R. Co.,* 293 U. S. 454; *Florida* v. *United States,* 282 U. S. 194; *Sanders Bros. Radio Station* v. *Fed. Communications Comm.,* 106 Fed. Rep. [2d] 321; *Saginaw Broadcasting Co.* v. *Grass,* 96 Fed. Rep. [2d] 748; 305 U. S. 613; *Atchison, T. & S. F. Ry. Co.* v. *United States,* 295 U. S. 193; *Ostrander* v. *State,* 192 N. Y. 415; *Matter of Elite Dairy Products, Inc.,* v. *Ten Eyck,* 271 N. Y. 488; *Matter of Beyerdale Dairy, Inc.,* v. *Ten Eyck,* 249 App. Div. 904; *Matter of Daley* v. *Byrne,* 250 App. Div. 666; *Matter of Highland Farms* v. *Ten Eyck,* 250 App. Div. 793; *Matter of Goldman* v. *Pink,* 253 App. Div. 862; *Matter of Gazdun* v. *Bruckman,* 256 App. Div. 882.)

*James L. Dowsey, County Attorney (Marcus G. Christ* of counsel), for County of Nassau, *amicus curiæ.* The findings are sufficient. *(Matter of Elite Dairy Products, Inc.,* v. *Ten Eyck,* 271 N. Y. 488.)

*Edgar F. Hazleton, County Attorney (Guy O. Walser* of counsel), for County of Suffolk, *amicus curiæ.* The application was properly denied by the Commission as a matter of fact, and such denial was improperly reversed by the Appellate Division as a matter of law. *(People ex rel. New York & Queens Counties Ry. Co.* v. *Public Service Comm.,* 173 App. Div. 826; *People ex rel. New York Central R. R. Co.* v. *Public Service Comm.,* 193 App. Div. 322; *Board of Supervisors* v. *Water Power & Control Comm.,* 227 App. Div. 345; *N. L. R. B.* v. *Thompson Products, Inc.,* 97 Fed. Rep. [2d] 13; *Matter of Elite Dairy Products, Inc.,* v. *Ten Eyck,* 271 N. Y. 488; *United States* v. *Baltimore & Ohio R. R. Co.,* 293 U. S. 454; *United States* v. *Louisana,* 290 U. S. 70; *Illinois Commerce Comm.* v. *United States,* 292 U. S. 474; *State of Montana* v. *United States,* 2 Fed. Supp. 448; 290 U. S. 593; *Panama Refining Co.* v. *Ryan,* 293 U. S. 388; *Dougherty* v. *Lion Fire Ins. Co.,* 183 N. Y. 302; *Matter of Carroll* v. *Knickerbocker Ice Co.,* 218 N. Y. 435; *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88; *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U. S. 197; *Matter of New Rochelle Water Co.* v. *Maltbie,* 248 App. Div. 66; *United States* v. *Morgan,* 307 U. S. 183.)

LEWIS, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination by the Water Power and Control Commission of the Department of Conservation which denied the respondent's application for authorization temporarily to use underground water in the Flatbush area of the borough of Brooklyn for domestic, industrial and fire hydrant purposes.

Upon the petition filed by the respondent for an order to review such determination answers were interposed by the county of Nassau and by the Water Power and Control

Commission. Thereupon Special Term by order transferred the proceeding to the Appellate Division, third department, which annulled the determination and remitted the proceeding to the Commission with directions to prepare findings of fact and proceed in accordance with the decision. Leave to appeal to this court was granted by the Appellate Division upon certified questions.

The record before us discloses that the respondent is a private water company which operates a number of water supply plants in the State, one of which is in the area in Kings county which was formerly the town of Flatbush and now constitutes the twenty-ninth ward of the borough of Brooklyn. Within the Flatbush area — extending three miles from east to west and two miles from north to south — the respondent supplies water service to a population of 350,000. In addition its service supplies water for twenty-one hundred fire hydrants and numerous industrial plants. None of the respondent's customers has an available source of water supply other than the respondent's wells, located in the Flatbush area. It also appears that, under conditions presently existing, the city of New York is unable to supply water needed by this area.

The daily safe yield of potable water from the respondent's wells is about twenty-nine million gallons of which the average daily consumption is slightly more than twenty-seven million gallons. Since 1932 there has been a loss of nearly fourteen million gallons in the available daily supply, due to the intrusion of chlorine in the wells, the abandonment of one well because of screen stoppage and a reduction in pumpage to prevent excess sands from passing through the screens. Meantime the respondent has made every reasonable effort to keep its wells in repair and, in an endeavor to maintain its supply, it has employed inspectors to trace down leaks. These efforts, however, have been offset to an extent by a gradual increase in population within the area served.

Since 1932 the peak of daily consumption has gone as high as thirty-three million gallons—five million gallons above

the daily average — and on such occasions has necessitated the use of a reserve supply. It thus appears that the supply of water in the respondent's wells presently available for the Flatbush area has an insufficient factor of safety and affords no margin to meet the demands of those occasions when existing wells may be shut down for repairs.

It was in such circumstances that the respondent in 1937 applied to the Water Power and Control Commission, pursuant to applicable provisions of the Conservation Law (Cons. Laws, ch. 65), for the approval of its proposed construction and the temporary operation of four graveled wells of shallow depth, each of which is designed to have a capacity for the daily production of two million gallons. The proposed location of the new wells is in the northerly part of the Flatbush area, removed from locations where existing wells have shown a tendency to salinity.

It should be said at this point that prior to the present application (known as No. 1286) the respondent had made a prior application in 1935 (known as No. 1009). By the 1935 application the respondent, as in the present proceeding, proposed to sink four new graveled wells each of which was to have a daily capacity of two million gallons. Such new construction was not to increase the authorized capacity of respondent's Flatbush plant but was to replace well capacity which had been lost through the encroachment of salt in existing wells and the diminution of capacity of its plant through long use. The 1935 application (No. 1009) was denied by the Commission, which denial was confirmed by the Appellate Division (256 App. Div. 883). The only difference between the present application (No. 1286) and the 1935 application (No. 1009) is that the former sought the Commission's approval for the *perpetual* operation of four replacement wells whereas the present application (No. 1286) seeks permission to operate *temporarily* four new replacement wells under conditions to be prescribed by the Commission and only until some new source of municipal water supply is made available to the Flatbush area from the New York City-Delaware River project or elsewhere.

It is estimated that such new municipal supply will be available in 1947. In the course of the trial of the present proceeding it was agreed that the record on appeal in the former application No. 1009 should be a part of the record in application No. 1286 and should be considered as before the court on any appeal.

From this statement of facts, as to which the parties are in practical accord, and the procedural steps which have led up to this appeal, we pass to a consideration of the questions certified by the Appellate Division:

" (1) Are there sufficient findings of fact to sustain the determination?

" (2) Was there competent proof of all the facts necessary to be proved in order to authorize the Water Power and Control Commission to deny the application of the New York Water Service Corporation?

" (3) If there was such competent proof, was there, upon all the evidence, such a preponderance of proof against the existence of any of those facts that the verdict of a jury affirming the existence thereof, rendered in an action in the Supreme Court triable by a jury, would be set aside by the court as against the weight of evidence?"

The decisions by the appellant Commission, both upon the respondent's present application (No. 1286) and upon its prior application (No. 1009), are in similar language, as follows:

" The Water Power and Control Commission, having given due consideration to the said petition and its exhibits, the proofs and arguments submitted at the hearing and the reports of its engineers thereon, determines and decides as follows:

" *First.* That the plans proposed are not justified by public necessity.

" *Second.* That said plans are neither just nor equitable to the other municipalities or civil divisions of the State affected thereby and to the inhabitants thereof, particular consideration being given to their present and future necessities for sources of water supply.

" *Third.* That further determination hereon is unnecessary.

" Wherefore, the Water Power and Control Commission does hereby reject the said application, maps and plans of New York Water Service Corporation."

In the absence of separate findings of fact, the conclusions last above quoted, although cast in language suggested by the statute (Conservation Law, § 523), cannot be regarded as sufficient to support the Commission's determination. We have seen that the respondent's application (No. 1286) is prompted by a lack of water available from its present facilities to supply the Flatbush area and to give assurance of a margin of safety adequate for emergencies until a municipal source of supply shall furnish the service. The respondent is entitled to challenge the determination by which its application is denied. A failure on its part in times of normal demand or in emergencies to furnish an adequate supply of potable water within its franchise area may involve serious consequences to its own rights and property and to the customers which it serves. It is entitled to findings by which it may know upon what factual basis rests the Commission's determination. (*Matter of Elite Dairy Products, Inc.*, v. *Ten Eyck*, 271 N. Y. 488, 498.)

Findings of fact in support of decisions by courts and administrative boards alike serve to give assurance to parties concerned that the decisions are based upon evidence of record and were not reached arbitrarily or influenced by extra-legal considerations. Where, as in this instance, a statutory review of the decision may be had (Conservation Law, § 523) findings of fact in some form are essential to enable the parties and any appellate court intelligently to determine whether the decision follows as a matter of law from the facts stated as its basis and whether the findings of fact have any substantial support in the evidence.

But we are told that findings of fact sufficient to support the Commission's determination upon respondent's application (No. 1286) are to be found in a memorandum which was filed by the Commission and is of record before us.

We have examined the memorandum in which appears the following statement which is the only one bearing the semblance of a finding of fact and which, standing alone or in its context, we regard as inadequate: " * * * that increasing knowledge of ground water conditions on Long Island has shown those conditions to be worse than was known at the time of the earlier application and to be moving rapidly towards the destruction of the usefulness of the water-bearing beds under western Long Island by reason of increasing salinity of the water."

In connection with the statement last quoted above the record before us shows that it was taken verbatim from the report made to the Commission by its executive engineer who conducted the hearing in this proceeding on behalf of the Commission. The statement, instead of being one strictly of fact, embodies the conclusion of an engineer upon ground water conditions over a large area of Long Island, which area, it is said, would be adversely affected in the event the present application by the respondent is approved. The Commission may with entire propriety give heed to the views which its executive engineer may express as to the merits of the respondent's present application. In this instance, however, without supporting findings of fact, the Commission has adopted, as decisive of respondent's application (No. 1286), the views of its executive engineer without affording the respondent an opportunity either to test by cross-examination the basis of the executive engineer's conclusions or to offer evidence material to those conclusions. In justice to the rights of the respondent upon its present application we believe it should be accorded such an opportunity. In *Matter of New York Title and Mortgage Co.* (277 N. Y. 66), which was a liquidation proceeding conducted by the Superintendent of Insurance, this court had occasion to consider the Superintendent's practice in arriving at the appraised valuation of mortgages and other types of property as bearing upon the allowance of certain claims. It was there said (p. 81): " * * * we think it appropriate to suggest not only that the Superintendent should disclose in the first instance the fundamentals

of the theory of his future action in fixing the losses of claimants, but that fair play requires also that an opportunity should be afforded to test by cross-examination the validity of any appraisal entering into the allowance of a claim." (Cf. *United States* v. *Baltimore & Ohio Southwestern R. R. Co.*, 226 U. S. 14, 20; *Morgan* v. *United States*, 304 U. S. 1, 16–22.)

In our further search for findings of fact to support the determination in the respondent's application (No. 1286) and upon the suggestion of the Commission, we have examined the memorandum filed with the decision upon the respondent's former application (No. 1009). Most of the statements of fact to be found therein are based upon historical data and information gathered from sources outside the record. Of the remaining statements of fact the few which are material are general in character and do not give adequate support to the determination of the precise issues involved in the respondent's application (No. 1286) with which this proceeding is concerned. We may not, with proper regard for the rights of the respondent, give to such general statements of fact a meaning sufficiently definite and certain to constitute them findings of fact and thus to afford a valid factual basis for the determination involved herein. (Cf. *Atchison, Topeka & Santa Fe Ry. Co.* v. *United States*, 295 U. S. 193, 201.)

The order of the Appellate Division should be modified by remitting the proceeding to the Water Power and Control Commission with instructions to make findings of fact in support of whatever determination it may reach upon the evidence received in connection with the respondent's application (No. 1286), with leave to any party appearing upon said application to introduce further evidence in connection therewith, if so advised, and, as so modified, the order should be affirmed, with costs to the respondent. Certified question No. 1 is answered in the negative. Certified questions Nos. 2 and 3 are not answered.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Ordered accordingly.