OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

(No. 78-1238—Decided June 27, 1979.)

Mr. *William A. Spratley,* consumers' counsel, *Mr. John Parks Hopkins* and *Mr. Edward A. Harter,* for appellant.

Mr. *William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Mark C. Sholander,* for appellee Public Utilities Commission of Ohio.

Messrs. *Fuller, Henry, Hodge & Snyder, Mr. Paul M. Smart* and *Mr. Fred J. Lange, Jr.,* for intervenor-appellee Toledo Edison Co.

*Per Curiam.* The threshold question posed for resolution in this cause is whether the determination of the commission, which found Unit No. 1 of the Davis-Besse nuclear generating facility used and useful, as of the date certain, in rendering the utility service for which rates are to be charged, was unlawful or unreasonable. R. C. 4903.13.

Appellant contends that the commission improperly included Unit No. 1 in the valuation of Toledo Edison's rate base when the evidence demonstrates that the unit, as of the date certain, was not "used or useful" in providing service to the jurisdictional ratepayers of Toledo Edison within the intended meaning of R. C. 4909.15(A)(1). Appellant avers that as of the date certain, Unit No. 1 did not contribute to Toledo Edison's overall electric demand requirements, and did not render "useful" service to its ratepayers. Appellant argues further that the unit, as of the date certain, was involved in extensive start-up testing, designed primarily to determine whether the unit would provide safe, dependable, and reliable service in the proximate future. Appellant urges this court to reverse the commission, and points out that the premature inclusion in the

rate base of a generating unit may result in a rate increase for Toledo Edison's consumers when the rendition of service by the unit may ultimately prove not to be feasible for an extended period of time.

In R. C. 4909.15, the General Assembly has provided a legislative formula for the commission to follow in determining the value of property to be included in a public utility's rate base for purposes of determining just and reasonable rates. R. C. 4909.15(A)(1) expressly provides that, in determining the extent to which property of a utility may be included in its rate base, the commission shall determine "[t]he valuation as of the date certain of the property of the public utility used and useful in rendering the public utility service" to the utility's ratepayers. Incorporated in this statutory language is the generally accepted principle that a utility is not entitled to include in the valuation of its rate base property not actually used or useful in providing its public service, no matter how useful the property may have been in the past or may yet be in the future. *Denver Union Stock Yard Co.* v. *United States* (1938), 304 U. S. 470.

Whether property is used and useful in providing service to the customers of a utility is a question which of necessity must be resolved on the basis of a case-by-case analysis. That status cannot be determined through the application of a rigid formula, but should be ascertained by the trier of the facts in light of all the circumstances. *Columbus Gas & Fuel Co.* v. *Pub. Util. Comm. of Ohio* (1934), 292 U. S. 398; *Petition of New England Tel. & Tel. Co.* (1949), 115 Vt. 494, 66 A. 2d 135; *Kansas Gas & Electric Co.* v. *State Corp. Comm.* (Kan. 1976), 544 P. 2d 1396. Upon review of such factual conclusions, a finding of the commission will not be reversed unless it appears from the record that it is manifestly against the weight of the evidence or is so clearly unsupported by the record as to show misapprehension, mistake, or a willful disregard of duty. *City of Kenton* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 71, 73, 209 N. E. 2d 430; *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 330 N. E.

454

2d 1, certiorari denied 423 U. S. 986, paragraph eight of the syllabus.

The commission concluded, under the instant facts and circumstances, that Unit No. 1 of the Davis-Besse nuclear facility was used and useful as of the date certain, and in so doing the commission selected the initial synchronization of the unit to Toledo Edison's transmission system as the critical event in which the unit acquired used and useful status. The commission's conclusion was based, in part, on testimony adduced at the hearing indicating that synchronization represents a distinct, significant and readily identifiable physical occurrence which demonstrates the operational status of a generating unit. The commission noted further "that while initial synchronization of a major generating unit will be the initial point at which a property is determined to be used and useful the circumstances surrounding the initial synchronization of any generating unit will be carefully examined and scrutinized" to determine if the "synchronization was in any way manipulated or, subsequent to the initial sychronization of a major defect or design flaw is discovered rendering the plant inoperative for significant periods of time * * *." Finding no such evidence herein, the commission determined that the synchronization of Unit No. 1 reflects initial used and useful status.

In *Glenwood Light & Water Co.* v. *Glenwood Springs* (1936), 98 Colo. 340, 55 P. 2d 1339, the Colorado Supreme Court held, at page 343:

"The test of whether the value of any given property shall be included in the rate base of a public utility is whether it is used and useful in supplying the commodity or service that utility has undertaken to furnish."

To the same effect is *Providence Gas Co.* v. *Burman* (R. I. 1977), 376 A. 2d 687, wherein the court reasoned at page 691:

"A utility's rate base represents the total investment in or the fair value of the used and useful property which it necessarily devotes to the rendering of the regulated service * * *."

The express language of R. C. 4909.15(A) (1) closely parallels the test enunciated by the above authorities in requiring property to be determined to be "used and useful in rendering the public utility service" to the utility's jurisdictional customers before it can be properly included in the valuation of the utility's rate base.

While the initial synchronization of a nuclear generating unit to its transmission system presents some indication that a generating facility is useful for purposes of supplying service to ratepayers, as the commission found, we conclude that, under the facts and circumstances at bar, the manifest weight of the evidence demonstrates that, at the date certain, the unit in question was undergoing start-up testing, which was not completed until November 12, 1977. Until that time, it was unknown whether the unit's systems would function in an integrated manner and continue to do so in the proximate future.

Furthermore, the uncontroverted facts demonstrate that prior to September 1, 1977, the date certain, the unit in question provided no beneficial service to the ratepayers of the utility. The record shows that even though the unit was synchronized with Toledo Edison's transmission system, and Mode 1 start up was achieved on August 30, 1977, positive net electrical generation on a daily basis did not result until September 20, 1977, several weeks after the passage of the date certain. Although, as the commission noted, the unit produced electricity on August 28, 1977, as part of the Mode 2 testing process, the evidence in the record is to the effect that the output of the unit was less than the amount consumed from Toledo Edison's transmission system in order to operate the unit. Therefore, the unit was not "useful" in rendering utility service to the ratepayers at that time.*

---

*It is undisputed that as of September 1, 1977, and until November 21, 1977, Toledo Edison's financial records classified Unit No. 1 as construction work in progress (CWIP). On November 21, 1977, after start-up testing was completed, the company declared the unit to be 25 percent in "commercial operation," and transferred a proportionate share of the unit into the plant in service account. At that time, the company discontinued its allowance for funds used during construction

Toledo Edison argues that to deny inclusion of the unit in its rate base would be tantamount to the confiscation of its property in violation of its constitutional right to due process of law. In *Columbus Gas & Fuel Co.* v. *Pub. Util. Comm., supra* (292 U. S. 398), the Supreme Court addressed the issue of whether gas fields not yet in service should be included in the rate base. Justice Cardozo, speaking for the court, stated at page 406:

"There will be no need in the computation of the rate base to include the * * * value of fields not presently in use, unless the time for using them is so near that they may be said, at least by analogy, to have the quality of working capital. * * * Postponement of * * * profit until the stage of imminent or present use is not an act of confiscation, but a legitimate exercise of legislative judgment."

In *St. Joseph Stock Yards Co.* v. *United States* (W. D. Mo. 1935), 11 F. Supp. 322, 329, affirmed 298 U. S. 38, the District Court stated:

"The matter of including or excluding land or property held for business expansion in the rate base is a matter of who—the ratepayers or the company—shall carry property which is not being used to produce the service paid for by the rate."

It would be inequitable to prematurely shift the risk of plant failure from the utility's investors to the ratepayers by the inclusion in the rate base of highly complex and innovative technology which has not been proven to be reasonably free from significant design or construction defects. The initial risk of failure is appropriately borne by the investors, who have undertaken the project and who will ultimately profit from its success. It is only proper that their venture be found operational before they com-

---

credit to income, and began to book depreciation on the unit. Witness Philip E. Miller, a former Chief of the Accounts and valuation Division of the Public Utilities Commission, testified in effect that Toledo Edison's accounting treatment is highly probative of the actual status of the unit and, as of the date certain, the company's FPC accounts classified the unit as CWIP.

mence to recoup their capital outlays from the consumers.

Toledo Edison contends further that, in determining whether property is used and useful, evidence submitted which shows the property became used and useful after the date certain, but within the test period designated by the commission, should be considered by the commission in determining whether the property is includable in the rate base. It is argued that if the unit is found to be used and useful at any point within the test period, it should be included in the rate base.

In our opinion, an analysis of the statutory language of R. C. 4909.15(A) (1), and its predecessor statutes, fails to support the interpretation urged by Toledo Edison. Moreover, paragraph one of the syllabus in *Mt. Vernon Telephone Corp.* v. *Pub. Util. Comm.* (1955), 163 Ohio St. 381, 127 N. E. 2d 14, states: "A telephone company applying to the Public Utilities Commission for an increase in its rates, tolls, charges, classifications and rentals has the burden of proving its reproduction-cost-new-less-observed depreciation value of its property used and useful in the rendition of telephone service, as of the date certain on which such property is to be valued." In so holding, we find no hardship imposed upon a utility which seeks to comply with the used and useful requirement as of the date certain. The test period, and to some extent the date certain, are determined essentially by the date at which the utility files its application for a rate increase. Any uncertainty which the utility harbors as to the used and useful status of its property, and therefore its includability in the rate base, can be minimized by the careful selection of the date at which the utility chooses to file its application for the rate increase.

Upon the facts presented in the cause *sub judice*, the finding and order of the commission with respect to the inclusion in the rate base of Unit No. 1 of the Davis-Besse generating facility was contrary to the manifest weight of the evidence and is therefore unreasonable and unlaw-

458

ful. *Cleveland Elec. Illuminating Co. v. Pub. Util. Comm.,
supra.*

The order of the commission is reversed.

*Order reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY and LOCHER, JJ., concur.

P. BROWN and HOLMES, JJ., dissent.