COLUMBUS & SOUTHERN OHIO ELECTRIC COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Columbus & Southern Ohio Elec. Co. *v.* Pub. Util. Comm. (1984), 10 Ohio St. 3d 12.]

(No. 83-461—Decided March 15, 1984.)

*Messrs. Porter, Wright, Morris & Arthur, Mr. Samuel H. Porter, Mr. William J. Kelly, Jr.,* and *Mr. Daniel R. Conway,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Robert S. Tongren* and *Ms. Marsha R. Schermer,* for appellee.

*Mr. William A. Spratley,* consumers' counsel, *Mr. Bruce J. Weston* and *Ms. Gretchen J. Hummel,* for intervening-appellee.

*Per Curiam.* R.C. 4903.10 prescribes the procedure for a rehearing. It states in pertinent part:

"After any order has been made by the * * * commission, any party * * * may apply for a rehearing in respect to any matters determined in said proceeding. * * *

"* * *

"Where such application for rehearing has been filed, the commission may grant and hold such rehearing on the matter specified in such application, if in its judgment sufficient reason therefor is made to appear. * * *"

A rehearing is limited, in the commission's discretion, first, to matters determined in the earlier proceedings, and second, among those, to matters for which, in the judgment of the commission, sufficient reason has been shown. The General Assembly did not intend for a rehearing to be a *de novo* hearing.

R.C. 4903.10 further states in pertinent part:

"* * * *Where the commission grants such rehearing,* it shall specify in the notice of such granting the purpose for which it is granted. The commission shall also specify the scope of the additional evidence, if any, which will be taken, but *it shall not upon such rehearing take any evidence which, with reasonable diligence, could have been offered upon the original hearing.* * * *" (Emphasis added.)

Appellant argues that the above-quoted language restricts the purpose for which a rehearing may be granted to the examination of newly discovered evidence which was in existence during the test year, but was not previously considered by the commission inasmuch as such evidence might bear on the reasonableness or lawfulness of the order. Appellant analogizes R.C. 4903.10 to Civ. R. 59(A)(8). Pursuant to that rule, only newly discovered evidence

which with reasonable diligence could not have been discovered and produced at trial, *not including evidence of matters occurring after the trial,* may be taken at a new trial. Similarly, appellant contends, the commission may not consider events transpiring after the test year on rehearing. We are not persuaded by appellant's analogy, however.

In the first place, a trial under the Civil Rules is normally concerned with a single past event, while the CWIP allowance involves a determination based, at least in part, on projected data having to do with a future event, namely the projected in-service date. Events taking place after a civil trial and those taking place after a utilities hearing have varying degrees of relevance to the respective matters to be determined.

Also, R.C. 4909.15 states in pertinent part:

"(A) The public utilities commission, when fixing and determining just and reasonable rates * * * shall determine:

"(1) The valuation as of the date certain of the property of the public utility used and useful in rendering the public utility service for which rates are to be fixed and determined. * * * *The commission may, in its discretion, permit a reasonable allowance for construction work in progress but, in no event, may any allowance for construction work in progress be made by the commission until it has determined, after a physical inspection, that the particular construction project is at least seventy-five per cent complete;*

"(* * *

"(4) The cost to the utility of rendering the public utility service for the test period * * *." (Emphasis added.)

CWIP is not specifically subject to the test-year restriction. Neither is it specifically subject to the restriction encompassed in the valuation of property as of the date certain. The CWIP allowance actually represents a percentage of the *total investment* in a project *to date.* This court has consistently deferred to the commission with regard to factual matters such as those involved in the determination of the CWIP allowance precisely because R.C. 4909.15 provides few substantive restrictions, and, thereby, gives the commission broad discretion in making such an allowance. *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 303 [21 O.O.3d 191].

According to the Revised Code, a utility must either prove that an investment is used and useful or convince the commission that it warrants a CWIP allowance before it may earn a return on that investment. In *Columbus Gas & Fuel Co.* v. *Pub. Util. Comm.* (1934), 292 U.S. 398, 406, the Supreme Court of the United States characterized this fact as follows:

"* * * There will be no need in the computation of the rate base to include the * * * value of fields not presently in use, *unless the time for using them is so near that they may be said * * * to have the quality of working capital. * * ** (Emphasis added.)

The seventy-five percent requirement, although it relates mainly to the physical status of the project, is the mechanism by which the Ohio General Assembly focuses on the issue of timing. After the seventy-five percent stan-

dard has been met, and all parties herein concede this to be the case, it is up to the commission to determine when and how much of the investment in the project may fairly be made the ratepayer's burden. The commission may consider any evidence which is relevant to such a determination which is not otherwise restricted.

Appellant goes on to argue that even if the commission acted within its authority, the evidence on rehearing did not warrant a modification of the November 5 order. Appellant cites R.C. 4903.10 as stating that the commission may modify its original order after rehearing *only if it finds that the original order is unreasonable or unlawful.* In fact, that section prescribes a standard quite different from that urged by appellant. It states, in pertinent part, as follows:

"If, after such rehearing, the commission is of the opinion that the original order or any part thereof is in any respect unjust or unwarranted, or should be changed, the commission may abrogate or modify the same * * *."

Following a rehearing, the commission need only be *of the opinion* that the original order should be changed for it to modify the same.

In the instant case, the commission made its concern with the ever slipping projected in-service date known in its November 5 order:

"* * * We believe the testimony * * * indicates that C&SOE's projected fuel load date of December 1982, and [the] in-service date of mid-1983 will *not* be met. Given this circumstance, we believe it is reasonable to limit the allowance for Zimmer to 25 percent of Zimmer's total costs."

Upon rehearing, in light of the NRC order, the commission's concern deepened:

"* * * The present uncertainty surrounding the Zimmer Project is a far different circumstance than any other we have previously considered in determining whether to include a construction project in the CWIP allowance. Moreover, the situation at Zimmer is very different from what existed when we made our initial decision to include twenty-five percent of the Zimmer costs in the CWIP allowance."

Appellant argues that no witness could estimate the length of the delay that the order would cause. While this is true, common sense dictates that an order indefinitely suspending construction on certain systems within a project will further postpone completion of the project as a whole. It is not unreasonable for the commission to have formed such an opinion.

Appellant also argues that where the failure to make a CWIP allowance results in an insufficient increase in gross annual revenues, such failure amounts to a taking without just compensation. Appellant argues that the commission's order on rehearing violates the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1, 16 and 19, Article I of the Ohio Constitution. This argument, however, begs the question. Until and unless an investment is lawfully included in the rate base, the commission has no authority to allow a utility to earn a return thereon.

This court has never held that the test-year concept is inviolable. In *Bd.*

*of Commrs.* v. *Pub. Util. Comm.* (1982), 1 Ohio St. 3d 125, the commission was confronted, upon rehearing, with unique circumstances calling for a post-test year expense adjustment. Similarly, in the instant case, the issue of the CWIP allowance was properly before the commission on rehearing. All parties before the commission had an opportunity to address that issue and the effect, if any, that the NRC order would have on appellant's projected in-service date.

The commission, acting within the bounds of its authority, found that the original order should be changed. The consequent modification was neither unreasonable nor unlawful.

Accordingly, the commission's order on rehearing is affirmed and the funds deposited pursuant to the stay granted on March 23, 1983 with interest collected thereon, shall be distributed to appellant's customers pursuant to R.C. 4903.19, upon approval by the court of the trustee's plan for distribution. The trustee is hereby authorized and directed to immediately take all steps necessary to prepare a plan for the distribution of the funds held pursuant to the stay order. The plan shall be submitted to the court for approval within forty-five days of this order and shall provide that distribution be made within ninety days of this order. Appellant is ordered to cooperate with the trustee and provide all information the trustee deems necessary to effectuate compliance with this order.

*Order affirmed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, J., concurs in judgment only.

LOCHER, J., concurs separately in judgment only.

HOLMES, J., dissents.

LOCHER, J., concurring in judgment only. I concur "in judgment only" for the same reasons articulated in my dissent in *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 303, 310 [21 O.O.3d 191]. The vagaries of uncertain CWIP "standards" serve to confuse consumers and utility alike. Once again I reiterate my concern, first expressed in *Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 108, 120 [12 O.O.3d 115], when I stated in my dissent:

"The commission has a two-fold duty to perform. First, it must establish standards for future decisions on issues of allowing CWIP in the rate base. Furthermore, the commission must initiate and direct the utility in the areas of capacity planning and utilization prior to allowing rate increases in the future."

Had standards been established which recognized, from the beginning, the difficulties of nuclear plant completion, this entire situation would never have come to pass and the utility would not have been led to singularly rely on the statutory percentage of completion criteria.

I concur in the judgment to demonstrate my approval for the ultimate commission decision to deny CWIP allowances to utilities when the operational status of nuclear plants is questionable. Hopefully this decision is a first step in the creation of more detailed standards for CWIP allowances. I disapprove, however, of the "after-the-fact" manner in which the decision was ultimately implemented which reflects a continued lack of standards, particularly with regard to uncompleted nuclear facilities, for imposition of CWIP.

I therefore respectfully concur in judgment only.

HOLMES, J., dissenting. It is my belief that the commission erred in granting a rehearing in this matter to reconsider its prior rate increase order on the basis of an event which occurred after the close of the test year.

This court has held on a number of occasions that the Public Utilities Commission may not rely upon events occurring after the date certain of the test year in order to make a determination of whether to include property or expenses in the rate base. *Pike Natural Gas Co.* v. *Pub. Util. Comm.* (1981), 68 Ohio St. 2d 181 [22 O.O.3d 410]; *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 303 [21 O.O.3d 191]; *Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 449 [12 O.O.3d 378].

Further, this case does not present any facts which could constitute an exception to the aforestated test-year rule as was established in *Bd. of Commrs.* v. *Pub. Util. Comm.* (1982), 1 Ohio St. 3d 125. That case did not involve the use of subsequently developed factors, but involved the consideration and utilization by the commission of cost factors for post-test year tree trimming which were presented by Dayton Power Power & Light at the time of the initial hearing.

Conversely, that which was utilized by the commission to revise and amend its prior opinion and order in the present case was a factor which was not in existence at the time of the initial hearing, and one that only came into existence after the close of the test year.

In the hearing and rehearing process before the Public Utilities Commission, R.C. 4903.10 permits a limited rehearing before the commission to remedy an unlawful or unreasonable order of the commission prior to the appellate process. The statute allows the commission, upon a rehearing, to consider facts and events in existence at the time of the original hearing, but which for some reason were not presented at such time. *Elyria Tel. Co.* v. *Pub. Util. Comm.* (1953), 158 Ohio St. 441 [49 O.O. 391]. However, this statute does not contemplate the introduction of evidence and events occurring after the test year to be utilized by the commission to review and modify

its prior decisions and order. See *Consumers' Counsel* v. *Pub. Util. Comm.*, *supra* (both cases).

Finally, the commission erred in considering the Nuclear Regulatory Commission's order suspending construction of the Zimmer plant, without considering other post-test-year matters which would directly affect the appellant's costs of providing service to its customers. A rehearing based upon a subsequent Nuclear Regulatory Commission's order, without the allowance of a full presentation by the utility of all other pertinent factors relating to rate base at such later time, would be a denial of appropriate hearing processes.

Accordingly, I would reverse the commission's order.