THE DAYTON POWER & LIGHT COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Dayton Power & Light Co. v. Pub. Util. Comm. (1980), 61 Ohio St. 2d 215.]

(No. 79-881—Decided February 13, 1980.)

*Mr. J. R. Newlin, Mr. M. A. Gribler, Messrs. Squire, Sanders & Dempsey, Mr. John Lansdale, Mr. Alan P. Buchmann* and *Mr. William C. Donahue,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Harris Leven,* for appellee.

*Mr. Allie B. Latimer,* general counsel, *Mr. Spence W. Perry* and *Ms. Patsy L. Mullenix,* for intervening appellee General Services Administration.

*Per Curiam.* The crux of appellant's argument is that the commission's order is unreasonable and unlawful in that it "guarantees" that appellant will not be able to earn the allowed return on common equity of 13.33 percent. While DP & L alleges several mistakes in the commission's analysis, it does not specify any of these as individual errors requiring reversal, but rather it contends that these mistakes establish a context in which the end result reached is unreasonable.

Primarily, appellant assails the commission's application of the discounted cash flow (DCF) method of calculating the required return on equity capital and the failure of appellee to adopt an "attrition" adjustment. Under the DCF methodology, the cost of equity capital is equal to the sum of current dividend yield plus growth rate. In forecasting future growth rate, the commission staff relied on the average growth in DP&L's earnings over the past ten years. Appellant contends that since its past earnings have been inadequate, this use of historical data will guarantee inadequate earnings in the future. However, this argument disregards the fact that the yield component of the DCF formula incorporates the current market price of the utility's stock. As the market price decreases the yield will increase, and this in turn raises the required return on common equity.

DP&L proposes that the commission consider its "comparable earnings" method of calculating cost of equity capital instead of the DCF method. Since the businesses represented in appellant's comparison had higher returns on common equity than the DCF method allowed for, appellant maintains that the commission violated the mandate of *Bluefield Water Works & Improvement Co.* v. *Pub. Serv. Comm.* (1923), 262 U.S. 679, 692, that a utility be given an opportunity to earn a return commensurate with other enterprises having corresponding risks.

Appellee argues that the businesses selected by DP&L

are not comparable, many being highly diversified, unregulated companies. The commission indicates that in recent years appellant's return on equity and its market-to-book ratio have been comparable to other electric and combined gas-electric utilities. While one method of calculating cost of equity capital may be favorable to another, we cannot say that appellee's use of the DCF methodology is clearly unreasonable; therefore, under our oft-stated standard of review,* this determination will not be disturbed.

Similarly, appellant contends that the commission erred by not adjusting the calculated cost of capital to compensate for attrition due to inflation. This is an adjustment this court has repeatedly refused to require of the commission. See, e.g., *Masury Water Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 147; *C & SOE* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 120; and *Franklin Co. Welfare Rights Org.* v. *Pub. Util. Comm.* (1978), 55 Ohio St. 2d 1. As stated in *Masury Water, supra,* at page 151, important policy considerations preclude us from compelling such an attrition allowance: " 'The magnitude of such an adjustment would, of course, be difficult to quantify * * * . [A]djustments of this nature may well serve to diminish the incentive for prudent management and for efficiency in operation.' " Additionally, we note that the equity market recognizes the lag and attrition inherent in utility rate regulation, and the use of market price in the DCF methodology incorporates investor expectations regarding inflationary trends. For these reasons, we again decline to compell such an adjustment.

Appellant alleges several other errors by the commission which it deems contributed to an unreasonable end result. First, appellee refused to include in the allowance for construction work in progress (CWIP) the cost of two unit trains purchased after the date certain. We concur in the view that these items are simply not CWIP. Secondly, while the com-

---

* As stated most recently in the syllabus of *C & SOE* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 120:

"A finding and order by the Public Utilities Commission will not be disturbed unless it appears from the record that such finding and order are manifestly against the weight of the evidence and are so clearly unsupported by the record as to show misapprehension or mistake or willful disregard of duty. * * * "

mission annualized a contractual increase in wages for union employees that became effective during the test period, it refused to make a similar adjustment to test-year expenses for non-union wage increases. Since these latter increases were not contractually required, we cannot say the commission judgment in this regard was unreasonable. Finally, appellee attempted to adjust for the abnormal conditions which arose during the test year, *i.e.*, blizzard conditions and a UMW strike, by excluding from expenses the wages of additional employees hired at DP&L's Stuart Station plant. While there is some doubt that these employees were actually hired to compensate for the abnormal conditions, we cannot say that appellee's attempt to balance the equities in this matter was clearly erroneous.

Throughout this appeal, DP&L has stressed that its continued failure in recent years to achieve the allowed return on equity is a result of the methods used by appellee in determining that return. Yet, as appellee indicates, other factors not before the commission may just as likely have contributed to the utility's recent inadequate earnings. For instance, approximately 40 percent of DP&L's operations were not involved in this rate case. Also, a substantial portion of appellant's capital is in CWIP (specifically its investment in the Zimmer Nuclear Plant), which is not includable in its rate base. Thus, appellant has failed to establish a causal relationship between its financial woes and commission action on the instant rate application, and has not substantiated its claim that the commission has "guaranteed" it will be unable to realize the authorized rate of return.

For the foregoing reasons, the order of the commission being neither unreasonable nor unlawful is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

PAUL W. BROWN, J., concurring.

The traditional doctrines associated with the rate-making process used in utility regulation developed in an era when the economy was markedly different from that of today. Om-

nipresent inflation and high interest rates have greatly increased the difficulty of utility operation on private capital, and rate-making has not been completely responsive to this economic environment. See Note, The Use of The Future Test Year in Utility Rate-Making, 52 Boston Univ. L. Rev. 791. Although the problems raised by the appellant have been persuasively argued, I am constrained to concur in this judgment because of prior precedent on this matter. This court has repeatedly deferred to the expertise of the Public Utilities Commission and refrained from compelling an attrition allowance. *Masury Water Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 147; *Franklin Co. Welfare Rights Org.* v. *Pub. Util. Comm.* (1978), 55 Ohio St. 2d 1. This has resulted because our standard of review in this type of cause wisely does not seek to substitute this court's judgment for that of the commission. It is not for us to strike out in a new regulatory direction. Our prior cases, however, should not be taken in any way to preclude such an allowance by the commission itself, should they deem it necessary in the public interest in light of peculiar economic circumstances. Clearly, the amicus brief of Mead Corp. et al., in which such a large group of financially sophisticated corporate customers express fears that the order under appeal "has the probable effect of impairing and jeopardizing Dayton Power & Light's continuing ability to serve as a dependable and reliable source of electrical energy," indicates that the problem must be confronted by the commission and the public in a realistic way; for, if it is not, greater economic harm than high utility bills may ensue.

HOLMES, J., concurs in the foregoing concurring opinion.