OHIO SUBURBAN WATER COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Ohio Suburban Water Co. v. Pub. Util. Comm. (1980), 62 Ohio St. 2d 17.]

(No. 79-880—Decided April 2, 1980.)

18

*Messrs. McConnaughey, Stradley, Mone & Maul, Mr. George C. McConnaughey* and *Mr. David C. Stradley,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Jonathan L. Heller,* for appellee.

*Per Curiam.* Appellant's initial challenge is founded upon the commission's determination to exclude from appellant's rate base the property which Huber Utilities received from Huber Homes as CIAC. Under statutory law existing prior to the enactment of Am. Sub. S. B. No. 94 (136 Ohio Laws 202), effective September 1, 1976, this property was includable in the rate base. Appellant contends that the exclusion, under the instant circumstances, amounts to an unconstitutional confiscation of its property in violation of the Fourteenth Amendment to the United States Constitution and Sections 1, 16 and 19, Article I of the Constitution of Ohio.

This court recently addressed a similar argument in *Ohio Utilities Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 153, 389 N.E. 2d 483. In that case, the utility company received as

CIAC substantial quantities of cash and property from development companies owned by the individuals who also held the utility company's stock. These contributions were apparently made prior to the enactment of Am. Sub. S.B. No. 94, and prior to the sale of the utility's stock to another company in 1973. Thereafter, when the General Assembly replaced the reproduction cost new less depreciation method of determining the valuation of rate base property with the original cost method of valuation set forth by Am. Sub. S.B. No. 94, the utility challenged the commission's subsequent exclusion of its CIAC from its rate base under the provisions of R. C. 4909.05(I) and (J).

In deciding that the implementation of the General Assembly's original cost valuation procedure did not contravene constitutional guarantees of due process, this court recognized that regulation in some instances may diminish the value of the property controlled, but concluded that the presence of this aspect of regulation does not amount to an unconstitutional taking of that property. As indicated in that cause, the rationale for the exclusion of Contributions in Aid of Construction from the value of property upon which a rate of return is guaranteed by the Constitution is the well-settled principle in utility law that it is "the investment of the shareholder which comprises the rate base," and "not contributions of others." *Ohio Utilities Co.* v. *Pub. Util. Comm.,* *supra,* at page 161, citing *Missouri, ex rel. S.W. Bell Tel. Co.,* v. *Public Service Comm.* (1923), 262 U.S. 276, 290 (Justice Brandeis dissenting); *Cincinnati* v. *Pub. Util. Comm.* (1954), 161 Ohio St. 2d 395, 119 N.E. 2d 619. It is not disputed that the instant property was donated to Huber Utilities prior to appellant's purchase of the assets of that company and that this property was received as Contributions in Aid of Construction.

Appellant argues also that it was Huber Homes which first dedicated the subject property to "the public use," not Huber Utilities, and therefore the value to be ascribed to the property for purposes of inclusion in appellant's rate base was its original cost to Huber Homes. However, the commission determined that Huber Utilities first dedicated the property in question. This conclusion was based in part upon the recom-

mendation of the staff in its report to the commission, and upon the testimony of appellant's witnesses who indicated that it was Huber Utilities which dedicated or devoted the property to the public use. We are not persuaded that the commission's interpretation of this record should be disturbed. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 330 N.E. 2d 1, certiorari denied, 423 U.S. 986.

Appellant urges further that the commission's use of the consolidated capital structure of appellant's parent utility, in calculating a fair and reasonable rate of return on appellant's rate base, contravenes the provisions of R. C. 4909.15 (D)(2)(a).*

In determining an appropriate rate of return under the provisions of R. C. 4909.15, the commission is afforded a wide degree of discretion in calculating the cost of capital of the utility whose rates are to be fixed. *Babbit* v. *Pub. Util. Comm.* (1979), 59 Ohio St. 2d 81, 391 N.E. 2d 1376. The provisions of R. C. 4909.15(A) and (D) do not prevent the Public Utilities Commission from assessing the consolidated capital structure of a utility's parent company in order to determine a fair and reasonable rate of return, if the capital structure of the parent company more reasonably reflects the subsidiary utility's actual cost of capital for rate-making purposes. *Ohio Water Service* v. *Pub. Util. Comm.* (1980), 61 Ohio St. 2d 308, _____ N.E. 2d _____; *Babbit* v. *Pub. Util. Comm., supra;* cf. *Franklin Co. Welfare Rights Org.* v. *Pub. Util. Comm.* (1978), 55 Ohio St. 2d 1, 12-13, 377 N.E. 2d 990.

The reasonableness of the commission's action in determining the cost of capital herein by reference to the consolidated capital structure of appellant's parent company, is set forth in the commission's order and decision in this cause:

"The Staff recommended a rate of return range of 9.26%

---

* R. C. 4909.15(D) provides, in part, that the commission, upon concluding that any rate, fare, or charge for services rendered is unreasonable or unjust, shall:

"(2) With *due regard to all such other matters as are proper, according to the facts in each case,*

"(a) Including a fair and reasonable rate of return determined by the commission with reference to a cost of debt equal to the actual embedded cost of debt of such public utility,

"(b) ***fix and determined the just and reasonable rate***to be***charged *** for the***rendition of the service***." (Emphasis added.)

to 9.57% based upon the consolidated capital structure of the applicant's parent, Consolidated Water Company. Randy G. Farrar, Financial Analyst with the Staff, testified that the cost of capital could not be strictly applied only to the subsidiary (Ohio Suburban) because investors demand a required return which is dependent upon the risk and uncertainty conditions facing the entire company, not just the subsidiary***. He believed that efficient capital budgeting by the parent company requires that the parent devote resources to the various productive activities up to the point where the expected return on the marginal dollar invested in each activity is equal to the cost of capital of the consolidated entity. In such a case, Mr. Farrar felt that no distinction could be made between the parent company and the subsidiary. The Staff computed the cost of long term debt in the consolidated capital structure of the parent at 8.47% and the cost of preferred stock at 6.19%***.

"***[W]e cannot ignore the relationship between the applicant and its parent. Although we recognize that Ohio Suburban does issue its own debt, we are persuaded by the argument of the Staff that the debt investor is not blind to the apparent subsidiary relationship and the fact that substantial portions of Ohio Suburban's capital comes from its parent***. The fact that Consolidated made advances in September, 1977 to Ohio Suburban to pay off its short term debt and a $625,000 of capital contribution in December negates the proposition that Ohio Suburban is financially independent of its parent***."

The order of the commission is neither unreasonable nor unlawful and is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.