OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Consumers' Counsel v. Pub. Util. Comm. (1981), 67 Ohio St. 2d 372.]

(No. 80-1653—Decided July 29, 1981.)

*Mr. William A. Spratley,* consumers' counsel, *Mr. Douglas J. Holmes* and *Mr. Richard P. Rosenberry,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Harris S. Leven,* for appellee Public Utilities Commission.

*Messrs. Jones, Day, Reavis & Pogue, Mr. Paul T. Ruxin, Mr. Richard D. Avil, Jr.,* and *Mr. Charles M. Kennedy,* for intervening appellee East Ohio Gas Co.

*Per Curiam.* The scope of this court's review of commission orders is set forth in R. C. 4903.13, which states in pertinent part:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

Therefore, an opinion by the commission will not be reversed or modified by this court absent a showing of misapprehension, mistake or willful disregard of duty. *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153, at page 156, quoting *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104. Accordingly, we must decide whether the commission's decision to include post-test year labor costs incurred through a negotiated labor contract in the rate increase constitutes an abuse of discretion.

Appellant contends the commission's order on rehearing is unlawful as being contrary to R. C. 4909.15. In relevant part, that section provides:

"(A) The public utilities commission, when fixing and

determining just and reasonable rates, fares, tolls, rentals, and charges shall determine:

"* * *

"(4) The cost to the utility of rendering the public utility service *for the test period* * * *.

"(B) The public utilities commission shall compute the gross annual revenues to which the utility is entitled by adding the dollar amount of return under division (A)(3) of this section to the cost of rendering the public utility service *for the test period* under division (A)(4) of this section.

"(C) *The test period,* unless otherwise ordered by the public utilities commission, *shall be the twelve-month period beginning six months prior to the date the application is filed and ending six months subsequent to that date. The revenues and expenses of the utility shall be determined during the test period.* The date certain shall be not later than the date of filing." (Emphasis added.)

Under the provisions of R. C. 4909.15, the commission is to base any grant of a rate increase for utilities on a fair and reasonable rate of return on capital investment, and the costs incurred by the utility during the test period, a 12 month span typically determined by the date of filing of the application.

The record shows that the test period was for the 12 months ending March 31, 1980. Also, the record indicates that the increased expense arising from the June 1980 labor agreement was not a cost incurred by EOG during the test year. Rather, the wage increase occurred after the test year. Therefore, appellant argues, it is unlawful for the commission to include that cost in EOG's rate increase. We agree.

The language of R. C. 4909.15 is unequivocal. Rate increases are based on costs of rendering utility service *during the test period.* The dates of the test year follow directly from the date the utility chooses to file for its rate increase. Aware that its employee labor contract was about to be renegotiated, the utility company filed the application with the commission at a time which caused the test year to end prior to the beginning date of the new contract. The adjustment which EOG sought on rehearing to take into account its increased labor costs arising from that contract would violate the test-year concept embodied in R. C. 4909.15.

The commission asserts that it is empowered to include costs not incurred in the test year on the authority of R. C. 4909.15(D)(2)(b).

That section provides, in pertinent part:

"(D) When the public utilities commission is of the opinion, after hearing and after making the determinations under divisions (A) and (B) of this section***that the maximum rates ***chargeable by any such public utility are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall:

"***

"(2) *With due regard to all such other matters as are proper, according to the facts in each case,*

"***

"(b) ***fix and determine the just and reasonable rate ***that will provide the public utility the allowable gross annual revenues under division (B) of this section, and order such just and reasonable rate***to be substituted for the original one." (Emphasis added.)

The commission, in adjusting rates for the post-test year labor contract, argues it was doing nothing more than giving "due regard to all such other matters as are proper, according to the facts in each case" and thereby assuring a "just and reasonable" rate of return.

Looking at the facts of this case, however, it is apparent that the post-test year wage cost was not a proper matter for the commission to consider. In *Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 449, this court, at page 457, stated:

"***The test period, and to some extent the date certain, are determined essentially by the date at which the utility files its application for a rate increase. Any uncertainty which the utility harbors as to the used and useful status of its property, and therefore its includibility in the rate base, can be minimized by the careful selection of the date at which the utility chooses to file its application for the rate increase."

While *Consumers' Counsel, supra* (58 Ohio St. 2d), dealt with determining whether property is "used and useful" for purposes of valuation, this rationale is equally appropriate to the case *sub judice.* A careful selection of a filing date by EOG

would have allowed the test year to include costs arising from the new labor contract. R. C. 4909.15(D)(2) authorizes departures from the test-year concept only when necessary to smooth out anomalies which would make the test year unrepresentative or misleading for ratemaking purposes. *Consumers' Counsel, supra* (67 Ohio St. 2d). Having filed an application for a rate increase and being well aware of pending contract negotiations, EOG chose the test period's beginning and ending dates, thereby excluding costs incurred on the effective date of the new contract. Given this factual posture, we believe inclusion of those costs by the commission was not a proper matter for consideration within the meaning of R. C. 4909.15(D)(2)(b).

In certain circumstances, of course, inclusion of costs not incurred in the test year is proper. *Consumers' Counsel v. Pub. Util. Comm.* (1980), 64 Ohio St. 2d 71; *Dayton Power & Light Co. v. Pub. Util. Comm.* (1980), 61 Ohio St. 2d 215. In this case, however, EOG chose a test year which excluded anticipated increased costs from the new labor contract. It cannot expect the commission to cure this omission by expanding the test year to include those later costs. Such a situation would emasculate the test period concept and abrogate the principle forming the basis of the ratemaking structure.

Accordingly, the order of the commission is reversed and the cause is remanded for a redetermination of EOG's permanent rate increase.

*Order reversed and*
*cause remanded.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

P. BROWN and HOLMES, JJ., dissent.

HOLMES, J., dissenting. The basic question here is whether the commission's decision to include post-test year utility labor costs constitutes an abuse of discretion which is either unreasonable or unlawful. I conclude upon the facts that to so include these additional costs of a negotiated increase in labor cost is not an abuse of discretion in considering rate increases.

Pursuant to R. C. 4909.15(D)(2), the commission was reasonably giving "due regard to all such other matters as are proper, according to the facts in each case, (a) including a fair and reasonable rate of return determined by the commission * * * ."

This pertinent section reasonably intends that the test year include the cost to the utility of providing service to the customers, but if the evidence shows that the specific months within the test year are unrepresentative of such costs, an adjustment should be made to provide a fair and reasonable rate of return.

Here, the facts are such that the events which transpired subsequent to the test period should be given consideration in the allowance of the requested rate increase. It was known, during the test year, that EOG's labor contract would expire on June 15, 1980, less than three months after the close of the test year.* Also, as the commission pointed out in its order, the rate of inflation was 11.5 percent in 1979, and 15.9 percent in the early months of 1980. So, it was anticipated that EOG's labor costs would be increased when it entered into a new labor contract. Lastly, the increased wages are a known increased cost of providing service, based upon a fixed legal obligation, and the rate increase would not become effective until the labor contract became effective.

Given the facts of this case, the majority's opinion ignores the command of R. C. 4909.15(D)(2) that the commission shall give due regard to all other matters that are proper. Accordingly, the commission's order should be affirmed.

P. BROWN, J., concurs in the foregoing dissenting opinion.

---

* Indeed, labor negotiations began April 21, 1980, within three weeks of the close of the test year.