OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Consumers' Counsel *v.* Pub. Util. Comm. (1982), 1 Ohio St. 3d 22.]

(No. 81-1862—Decided July 14, 1982.)

Mr. *William A. Spratley,* consumers' counsel, *Mr. Timothy C. Jochim, Ms. Margaret A. Samuels* and *Mr. Bruce J. Weston,* for appellant.

Mr. *William J. Brown,* attorney general, and *Mr. Marvin I. Resnik,* for appellee.

Messrs. *Fuller & Henry, Mr. Paul M. Smart* and *Mr. Fred J. Lange, Jr.,* for intervening appellees.

*Per Curiam.* There can be no question that the expenditures incurred by Toledo Edison for the cancelled nuclear facilities represent an extraordinary loss which cannot be transformed into an ordinary operating expense recoverable through rates paid by its customers. *Consumers' Counsel, supra* (67 Ohio St. 2d), at 164. Our decision in the Cleveland Electric Illuminating rate case applies with equal force to the Toledo Edison rate case, since both involve an attempt by the respective utilities to recoup through rate increases the loss suffered through the cancellation of four nuclear power projects.

This appeal is taken from a decision by the commission to investigate the effect the *Consumers' Counsel* decision had on the propriety of the unappealed order in the Toledo Edison rate case, pursuant to R.C. 4905.26.[1] That statute provides, in relevant part:

---

[1] Had the Consumers' Counsel chosen to appeal the decision in the original commission order which granted Toledo Edison a rate increase based in part on the lost investment in the cancelled nuclear facilities this court undoubtedly would have mandated disallowance of the expense. However, for reasons unknown, Consumers' Counsel failed to appeal the decision in case No. 80-377-EL-AIR.

"Upon complaint in writing against any public utility by any person, firm, or corporation, or *upon the initiative* or complaint *of the public utilities commission, that any rate * * * is in any respect unjust, unreasonable,* unjustly discriminatory, unjustly preferential, *or in violation of law * * ** if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing * * *." (Emphasis added.)

This court has previously recognized the use of R.C. 4905.26 as a means of collateral attack on a prior proceeding. *Western Reserve Transit* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 16 [68 O.O. 2d 9]. That statute may be used to investigate the reasonableness of rate schedules in the light of new law, such as our decision in *Consumers' Counsel, supra.* See *Ohio Utilities Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 153, 159 [12 O.O. 3d 167, 170]. If, after an investigation and hearing pursuant to R.C. 4905.26, the commission determines that existing rates charged by a utility are unjust or unreasonable, the commission can invoke its authority under R.C. 4909.15 (D) to fix new rates and order them to be substituted for the existing ones. *Ohio Utilities Co., supra,* paragraph one of the syllabus.

In order to find such rates unreasonable or in violation of law, for purposes of R.C. 4905.26, it must produce revenues in excess of those allowable. This rule follows from the principle that this court will not reverse an order of the commission unless appellant is shown to have been prejudiced thereby. Should the commission find unreasonable or in violation of law a rate which produces revenues within the range of those allowable, the utility is prejudiced thereby, since it has an entitlement to just, reasonable, and compensatory rates. Conversely, should the commission find reasonable and lawful a rate which falls within the range of those allowable, there can be no prejudice to appellant, and this court will not reverse the commission's order. See *Electrical Protection Assn.* v. *Pub. Util. Comm.* (1977), 50 Ohio St. 2d 169, 174 [4 O.O. 3d 369, 372]; *Worthington Hills Civic Assn.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 11, 13 [74 O.O. 2d 40, 41].

The commission concluded, following its investigation and the presentation of arguments by both Toledo Edison and Consumers' Counsel, that the rates were neither unreasonable nor in violation of law. An examination of the commission's reasoning underlying this conclusion supports such a finding, given the unique circumstances of this case.

The level of rate relief authorized in case No. 80-377-EL-AIR was limited to the level initially requested by the company, even though the record would have supported an increase in excess of that proposed. The commission expressly refused to consider the cost incurred and concomitant additional revenue requirement associated with the temporary one percent increase in the Ohio gross receipts tax, which it would have approved but for the limit of the initial company request. Similarly, the rate of return anticipated from the proposed rates approximated the lower bound of the lowest rate of return recommendation offered at the proceeding. According to the commission, an

elimination of the recognition of the expenses associated with the cancelled nuclear facilities, and inclusion of the otherwise allowable cost incurred by the tax increase, produces a rate of return in the middle range of the rate of return recommended by witnesses at the proceeding. Given this unique factual situation, the order of the commission finding that Toledo Edison's rates need not be reduced is appropriate, since the rate does not produce revenue in excess of that allowable and appellant is not prejudiced thereby. Accordingly, the order of the commission is affirmed.

*Order affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

LOCHER, J., dissenting. R.C. 4905.26 provides, in part: "* * * upon the initiative or complaint of the public utilities commission, that any rate * * * is in any respect * * * in violation of law * * *, the commission shall fix a time for hearing * * *." The majority correctly observes that this provision permits a collateral attack on the commission's order. Under our holding in *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153 [21 O.O. 3d 96], the rate authorized by the PUCO in this case is in violation of the law to the extent that the commission included as expenses an amortized portion of Toledo Edison's investment in the nuclear facilities. Therefore, it was not necessary under R.C. 4905.26 for OCC to appeal the June 3, 1981, order of the commission on rehearing in order to eliminate those costs from the rates charged to Toledo Edison customers.

If the commission had merely reduced the total rate accordingly, I would have no quarrel with the result. Instead, the commission replaced the amortization allowance with expenses which it had previously refused to consider in calculating the rate. This permits the utility to "swap and shop." That is, the utility can appease its customers by understating its rate request during the rate case while including a potentially questionable item. Meanwhile, the utility can set aside other expense items which it can substitute should the questionable expense fail during a later R.C. 4905.26 proceeding.

Regrettably, this substitution approach to R.C. 4905.26 undermines the basic structure of utility proceedings. Rate cases are detailed undertakings. They require the utility, the commission and the public to scrutinize a test year, including a date certain, in order to arrive at a reasonable rate for the customers and a reasonable rate of return for the utility. R.C. 4909.15. That is why R.C. 4905.26 permits only collateral attack on those rates which are "bad" rates, not substitution of those rates which could have been "good" rates had the utility asked for them.

I would, therefore, remand this cause to the PUCO and order the commission to reduce the total rate by the amount of the amortization of the nuclear facility costs.