BOARD OF COMMISSIONERS OF MONTGOMERY COUNTY ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Bd. of Commrs. *v.* Pub. Util. Comm. (1982), 1 Ohio St. 3d 125.]

(No. 81-1680—Decided August 4, 1982.)

*Mr. Lee C. Falke,* prosecuting attorney, *Mr. Henry W. Eckhart* and *Mr. Herbert C. Hunt,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Jonathan L. Heller,* for appellee.

*Mr. Stephen F. Koziar, Jr., Smith & Schnacke Co., L.P.A., Mr. Charles J. Faruki, Mr. Paul L. Horstman* and *Mr. D. Jeffrey Ireland,* for intervening appellee.

*Per Curiam.* Before this court, appellants' sole challenge to the commission's order is the propriety of allowing DP&L to recover the additional expenses for line clearance. Appellants argue that the inclusion of the additional sum violates the test year concepts contained in R.C. 4909.15. In support of its position, appellants rely on *Consumers' Counsel (EOG), supra.*

In *Consumers' Counsel (EOG),* the commission allowed a post-test-year adjustment to East Ohio Gas for increased labor expenses due to the signing of a new labor contract. Upon appeal, this court reversed. We held that R.C. 4909.15(A) precluded East Ohio Gas from recovering post-test-year expenses. However, we recognized that: "In certain circumstances, of course, inclusion of costs not incurred in the test year is proper." 67 Ohio St. 2d at 376.

Here, the commission, upon applications for rehearing, found that because of the unique circumstances present, *Consumers' Counsel (EOG)* was not a bar to the additional allowance. We agree; therefore, we affirm.

This court has consistently held that we will not disturb the final order of the commission absent a showing of misapprehension, mistake or willful disregard of duty. *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103,

104 [12 O.O.3d 112]; *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153, 156 [21 O.O.3d 96]. Consequently, we must decide whether allowing the post-test-year adjustment in this case, given these unique circumstances constituted mistake, misapprehension or willful disregard of duty by the commission.

As a starting point, the above-quoted language from *Consumers' Counsel (EOG)* makes it clear that we did not adopt a *per se* rule which would preclude all post-test-year adjustments. Rather, while not elaborating, we stated that adjustments would be allowed in certain circumstances. Are these proper circumstances? For reasons that follow, we hold that this is a proper case for the allowance of a post-test-year adjustment.

The uncontroverted testimony, here, was that DP&L had not kept its lines as clear as necessary to provide safe, efficient service. If DP&L does not improve its performance in this area, more power lines will be damaged with a consequent increase in power outages. This will lead to safety hazards for both DP&L's customers and its employees. See R.C. 4905.06. Additionally, costs will increase with delay. DP&L will be forced to spend more money on repairs, and delay in implementing the recommended plan will render it more expensive.

Further, R.C. 4909.15(D)[7] provides for adjustments in a utility's rates when they are "insufficient to yield reasonable compensation for the service rendered." In *Consumers' Counsel* v. *Pub. Util. Comm., supra,* we stated that R.C. 4909.15(D) gives the commission the authority to "smooth out anomalies in the ratemaking equation that tend to make the test year data unrepresentative for ratemaking purposes." 67 Ohio St. 2d at 166.

Where, as here, the commission orders a utility to adopt a specific plan to assure continued safe, efficient service, R.C. 4909.15(D) provides sufficient statutory authority for post-test-year adjustments. To disallow this adjustment would result in an anomaly in the ratemaking equation, making the test year unrepresentative for ratemaking purposes.

Accordingly, the commission's order is affirmed.

*Order affirmed.*

---

[7] R.C. 4909.15(D) provides, in pertinent part:

"When the public utilities commission is of the opinion, after hearing and after making the determinations under divisions (A) and (B) of this section * * * that the maximum rates * * * chargeable by any such public utility are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall:

"* * *

"(2) With due regard to all such other matters as are proper, according to the facts in each case,

"* * *

"(b) * * * fix and determine the just and reasonable rate * * * that will provide the public utility the allowable gross annual revenues under division (B) of this section, and order such just and reasonable rate * * * to be substituted for the existing one.* * *"

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

LOCHER, J., dissenting. The majority opinion turns its back on our holding in *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 372 [21 O.O.3d 234]. Therefore, I dissent.

In *Consumers' Counsel, supra,* the commission had ordered that the utility's rate could include increased expenses arising under a labor contract which was to take effect *after* the test year. We reversed the commission and concluded that to permit its order to stand "would emasculate the test period concept and abrogate the principle forming the basis of the ratemaking structure." 67 Ohio St. 2d, at 376. This was in spite of the fact that the utility's request was "based upon a fixed legal obligation * * *." 67 Ohio St. 2d, at 377 (Holmes, J., dissenting). In reasoning to our holding in that case, we observed:

"Under the provisions of R.C. 4909.15, the commission is to base any grant of a rate increase for utilities on a fair and reasonable rate of return on capital investment, and the costs incurred by the utility during the test period, a 12 month span typically determined by the date of filing of the application.

" * * *

"The language of R.C. 4909.15 is unequivocal. Rate increases are based on costs of rendering utility service *during the test period*. The dates of the test year follow directly from the date the utility chooses to file for its rate increase. * * *" (Emphasis *sic*.) 67 Ohio St. 2d, at 374. Those same principles apply to this case and require our reversal of the commission.

Tree-trimming has the laudable aim of minimizing the risk of disruptions in service. Nevertheless, DP&L failed to keep current with the challenges of nature. All utilities should stay even, at the very least, with the ravages of the elements and the demands of growing vegetation. Yet, DP&L chose when to file its rate request just as the utility had in *Consumers' Counsel, supra.* DP&L also exacerbated the hazard by trimming only nine percent of the trees in each of the prior five years rather than 33⅓ percent per year. This is not the type of anomaly against which R.C. 4909.15(D) was intended to protect, and we should not permit a utility to turn this kind of conduct into an economic advantage. This is particularly so in light of the fact that DP&L's net income increased in 1980 to over $64 million, over $3 million higher than its net income in the previous year. Its net income in the first quarter of 1981 was over $32 million, an increase of $8 million over its forecasted net income for that period.

The holding of the majority, therefore, discourages timely tree-trimming rather than encouraging it. A utility may now receive an early return for tree-trimming expenditures if it delays making them long enough. This serves neither the consuming public nor the purposes of the statutory scheme for ratemaking. R.C. 4909.15.

Accordingly, I would reverse the commission's order and remand the cause to the commission with instructions to decrease the total rate of DP&L in an amount consistent with this opinion and our holding in *Consumers' Counsel, supra* (67 Ohio St. 2d 372 [21 O.O.3d 234]).