OHIO WATER SERVICE COMPANY, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Ohio Water Service Co. *v.* Pub. Util. Comm. (1983),
3 Ohio St. 3d 1.]

(No. 82-304—Decided February 9, 1983.)

*Messrs. Murphey, Young & Smith* and *Mr. Frank C. Dunbar III,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Jonathan L. Heller,* for appellee.

*Per Curiam.* The sole issue presented by this appeal is whether the facts of this case fall within our decision in *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 372 [21 O.O.3d 234]. In that case we held that the commission abused its discretion by including in the rate increase post-test period labor costs incurred by a labor contract negotiated after the end of the test year. In its order denying inclusion of the labor cost in the case at bar, the commission relied exclusively on *Consumers' Counsel, supra,* suggesting that decision be applied broadly. For the following reasons, we find *Consumers' Counsel* both applicable and controlling.

Our decision in *Consumers' Counsel, supra,* was clearly a recognition of the solicitude which must be afforded the concept of the test period as contained in R.C. 4909.15.[1] In essence, the test period is the twelve-month span during which the utility's costs are monitored so that the commission can make an informed decision on the utility's application for a rate increase. Of utmost importance is the fact that, to a great extent, the utility controls the dates of the test period by the timing of its application for a rate increase. R.C. 4909.15(C).[2] See, also, *Consumers' Counsel, supra,* at 374. Thus, there is

---

[1] R.C. 4909.15 provides in part:

"(A)  The public utilities commission, when fixing and determining just and reasonable rates, fares, tolls, rentals, and charges shall determine:

"* * * (4)  The cost to the utility of rendering the public utility service for the test period * * *.

"(B)  The public utilities commission shall compute the gross annual revenues to which the utility is entitled by adding the dollar amount of return under division (A)(3) of this section to the cost of rendering the public utility service for the test period under division (A)(4) of this section.

"(C)  The test period, unless otherwise ordered by the public utilities commission, shall be the twelve-month period beginning six months prior to the date the application is filed and ending six months subsequent to that date. The revenues and expenses of the utility shall be determined during the test period. The date certain shall be not later than the date of filing."

[2] R.C. 4909.15(C) states,

"The test period, unless otherwise ordered by the public utilities commission, shall be the twelve-month period beginning six months prior to the date the application is filed and ending six months subsequent to that date. The revenues and expenses of the utility shall be determined during the test period. The date certain shall be not later than the date of filing."

a strong presumption that only expenses incurred during the test period may be included in awarding a rate increase. However, this is not an absolute rule as was openly recognized in *Consumers' Counsel, supra.* In *Consumers' Counsel, supra,* at page 376, we stated:

"* * * R.C. 4909.15(D)(2) authorizes departures from the test-year concept only when necessary to smooth out anomalies which would make the test year unrepresentative or misleading for ratemaking purposes."

For example, in *Bd. of Commrs.* v. *Pub. Util. Comm.* (1982), 1 Ohio St. 3d 125, we allowed post-test period inclusion of line clearing costs because of the danger of power outages and safety hazards posed by the overgrowth of tree limbs near power lines and the order of the commission that the lines be cleared. We have repeatedly acknowledged that "[i]n certain circumstances, of course, inclusion of costs not incurred in the test year is proper." *Consumers' Counsel, supra,* at 376, and *Bd. of Commrs.* v. *Pub. Util. Comm., supra,* at 127.

Nevertheless, we are not persuaded that the wage increase in the cause *sub judice* is an includable post-test period expense. It is undisputed that appellant's requested test period dates were adopted by the commission. It also appears that appellant's motivation for requesting that the test period begin on October 1, 1980 was to include the initial seven percent wage increase which became effective that date, being fully aware that another wage increase would go into effect on October 1, 1981 potentially exceeding seven percent. Since these two wage increases were one year and one day apart and the duration of the test period was one year, appellant could not structure the test period so as to include both wage increases. Thus, regardless of the chosen test period, one wage increase would be included, the other excluded. Appellant plainly had the opportunity to request a test period which would have included the October 1, 1981 wage increase, but, for reasons *dehors* the record, chose not to do so.

Appellant argues that, because the amount of the October 1, 1981 wage increase had to be determined within the test period and the union contract was legally binding throughout the test period, the additional cost is an includable expense. To the contrary, an includable post-test period expense should be unanticipated and outside the utility's selection and control. To that extent, appellant's approach advocates exclusion. Moreover, appellant's position would tend to efface the test-year concept by allowing the exceptions to overwhelm the general rule.

Therefore, we hold that the sound regulatory policy is to adhere to the general rule that utility rate increases be based on costs of rendering utility service during the test period.

Accordingly, the order of the commission is affirmed.

*Order affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

4

HOLMES, J., dissents.

J.P. CELEBREZZE, J., not participating.

HOLMES, J., dissenting. I continue to adhere to my position that post-test-year adjustments are under certain circumstances permissible. See *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 372, 376 [21 O.O.3d 234] (Holmes, J., dissenting). Consequently, I dissent.

The General Assembly has not forbade all adjustments to test years. Rather, R.C. 4909.15(D) allows adjustments where the maximum allowable rate will not provide a utility with sufficient revenue to yield reasonable compensation. In *Bd. of Commrs.* v. *Pub. Util. Comm.* (1982), 1 Ohio St. 3d 125, 127, we recognized that in certain instances "* * * R.C. 4909.15(D) provides sufficient statutory authority for post-test-year adjustments." See, also, *Consumers' Counsel* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 71 [18 O.O.3d 302] (R.C. 4909.15 authorizes commission to grant an attrition allowance for cost of proprietary capital).

In my opinion, the present case presents an adequate factual basis for allowing a post-test-year adjustment. Appellant entered into its labor contract during the test year. The increased wages took effect one day after the close of the test year. Also, the appellant was obligated, by contract, to incur these additional costs.

Therefore, I would hold that the commission may allow post-test-year adjustments where a utility has entered into an obligation to incur increased expenses which are certain, rather than generalized assumptions that utility costs will increase. To hold otherwise, as does the majority, is to ignore that rates are made for the future and that income should reflect costs. Accordingly, I would reverse the order of the commission.