OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Consumers' Counsel v. Pub. Util. Comm. (1983), 6 Ohio St. 3d 412.]

(No. 82-1461—Decided August 31, 1983.)

*Mr. William A. Spratley,* consumers' counsel, *Mr. Richard P. Rosenberry* and *Ms. Gretchen J. Hummel,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Harris S. Leven* and *Mr. James R. Bacha,* for appellee.

*Mr. John A. Rozic, Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buchmann* and *Mr. Arthur E. Korkosz,* for intervening appellee.

*Per Curiam.* The question presented in this appeal is whether the commission's order approving the amortization and recovery of the depreciation deficiency is unreasonable or unlawful.

Appellant argues that the commission's order authorizing United to recover its depreciation reserve deficiency by virtue of a ten-year amortization schedule is unlawful under R.C. 4909.15. Specifically, appellant asserts that a change in depreciation estimates, or a prior depreciation miscalculation, culminates in a "past loss," which is not a cost of rendering utility service during the test year.

In support of this contention, appellant relies upon *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153 [21 O.O.3d 96] (hereinafter *"CEI"*). Therein, this court reversed an order of the commission providing the Cleveland Electric Illuminating Company a ten-year amortization schedule to recover costs associated with the cancellation of four nuclear power plants.

OCC made precisely the same contentions in *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 6 Ohio St. 3d 405 (hereinafter *"Toledo Edison"*), decided this same day, which involved the continued amortization of a depreciation reserve variance first recognized by the commission in 1975. In *Toledo Edison* we distinguished *CEI* and rejected OCC's test-year contentions, stating at pages 408-409 as follows:

"* * * [I]n *CEI* this court reversed the commission for its transformation without statutory authorization of a 'major capital investment,' which had never provided any service to the utility's customers, into an item of expense. We are confronted with no such transformation in the case at bar because depreciation, unlike unbuilt generating facilities, is a 'cost to the utility of rendering the public utility service.' For this reason the case at bar and *CEI* are distinguishable. This conclusion does not, however, end our inquiry. We must now consider whether the amortization of the depreciation reserve deficiency 'represent[s]' the type of anomalous condition for which inclusion of costs not incurred during the test period would be permissible.' *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, 94.

"* * *

"A depreciation reserve is an expense item specifically contemplated by statute. R.C. 4905.18 provides in pertinent part:

" 'Every public utility shall carry a proper and adequate depreciation or deferred maintenance account, whenever the public utilities commission, after investigation, determines that a depreciation account can be reasonably required. The commission shall ascertain, determine, and prescribe what are

proper and adequate charges for depreciation of the several classes of property for each public utility. * * * The charge for depreciation shall be such as will provide the amount required over the cost and expense of maintenance to keep the property of the public utility in a state of efficiency corresponding to the progress of the art or industry. The commission may prescribe such changes in such charges for depreciation as it finds necessary.'

"* * * R.C. 4905.18 speaks directly to depreciation charges and changes * * * and R.C. 4909.15 (D)(1), a part of the ratemaking section, states that the commission is to give 'due regard * * * to the necessity of making reservation out of the income for * * * depreciation * * *' in fashioning rates. * * *"

We continue to adhere to the view that if the legislative intention underlying R.C. 4905.18 is to be given effect, then the statute must be read *in pari materia* with R.C. 4909.15. We therefore conclude that the commission's order authorizing the amortization of the depreciation reserve deficiency constitutes a reasonable and lawful adjustment to United's expenses and, accordingly, the order is hereby affirmed.

*Order affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES, C. BROWN and J.P. CELEBREZZE, JJ., concur.

LOCHER, J., dissents.

LOCHER, J., dissenting. I dissent from the majority opinion because this case sidesteps the rationale of *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153 [21 O.O.3d 96], dismissed in 455 U.S. 914 ("*CEI*"), and for the additional reasons stated in my dissent in *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 6 Ohio St. 3d 405 ("*Toledo Edison*") (case No. 82-1428).

Once again the commission has ignored the testimony of its own staff witness: "The Staff would agree that if an amortization is used, or if remaining life based accrual rates are used, then a depreciation reserve adjustment would be appropriate. However, the Staff policy is that recovery of under-accruals or the makeup of past losses should not be borne by the current and future ratepayers." The staff position, therefore, reflects this court's holding in *CEI*, the basis of which is the test-year concept.

In *CEI*, we refused to allow the utility to pass on the costs of a speculative investment to consumers. We held that investors should bear that kind of risk.

Yet, in this case the commission has ratified what is — in the words of a company witness — a "prospective method" to arrive at a "theoretical reserve calculation" and created a new expense for consumers to pay without any commensurate enhancement of service. "Furthermore, a minori-

ty of this court has already recognized the inequity of permitting utilities to manipulate depreciation figures to increase rates. See *Duff* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 367, 382 [10 O.O.3d 493] (Locher, J., dissenting)." *Toledo Edison, supra,* at 412.

Likewise, the commission errs by relying on R.C. 4905.18. That provision permits depreciation accounts but does not endorse the "prospective method" and "theoretical reserve calculation" employed to the utility's benefit in this case.

Therefore, the decision and order of the commission is unreasonable because it ignores the testimony of its own staff witness as well as those of both the utility and the Office of Consumers' Counsel. Likewise, the commission's ruling is unlawful because (1) the Revised Code does not provide a basis for this type of expense; and (2) this amortization of a depreciation variance is expressly contrary to this court's holding in *CEI*.

Accordingly, I would reverse the order of the commission.