CITY OF COLUMBUS ET AL., APPELLANTS, v. PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Columbus v. Pub. Util. Comm. (1984), 10 Ohio St. 3d 23.]

(No. 83-608—Decided March 15, 1984.)

Mr. Gregory S. Lashutka, city attorney, Mr. Patrick M. McGrath, Mr. John C. Klein, Bell & Randazzo Co., L.P.A., and Mr. John W. Bentine, for appellants.

Mr. Anthony J. Celebrezze, Jr., attorney general, Mr. Robert S. Tongren and Mr. Steven H. Feldman, for appellee.

*Mr. Donald W. Morrison, Mr. William Hunt* and *Mr. Charles S. Rawlings,* for intervening appellee.

*Per Curiam.* Appellants contest two aspects of the rate increase granted by the commission. First, appellants challenge the commission's calculation of the working capital allowance included in the rate base. Second, appellants dispute the commission's allowance of a curtailment adjustment to the rates charged for vertical services, message tolls, and private line services. We will address the issues in the order presented above.

## I

When fixing rates, R.C. 4909.15(A)(1) requires the commission to determine the valuation of property used in the rendition of services by a public utility. Included in the valuation is a reasonable allowance for working capital.

The theory behind a working capital allowance is the recognition that a utility company must have additional investments in inventories of materials and supplies, and a certain amount of cash in order to sufficiently operate as a business. The allowance is computed as a fraction of the utility's operation and maintenance expense less certain deductions. The fraction is determined by a formula which assumes that charges will be paid within forty-five days after the service is rendered. The commission has determined the fraction for electric and gas companies to be 1/8.

However, with regard to telephone companies, the commission has traditionally assumed that one-half of the services provided were billed in advance. Therefore, the formula has been altered and the fraction of 1/12 is being utilized to determine the working capital allowance for such companies.

In the case *sub judice,* evidence was presented to establish that two-thirds of Ohio Bell's charges were billed in advance. Accordingly, the commission adjusted the variables of its formula which resulted in reducing the fraction to 1/15.

Appellants argue that the modified fraction adopted by the commission is unlawful as it relied upon evidence outside the record. We disagree.

It is conceded by the parties hereto that a lead-lag study would produce the most accurate estimate of a utility's requirement for working capital. However, lead-lag studies are expensive to conduct. The commission has therefore selected a formula approach which it believes to be a reliable approximation of a utility's working capital requirements. We have also recognized and approved the formula approach as a reliable instrument used by the commission. See *Columbus* v. *Pub. Util. Comm.* (1950), 154 Ohio St. 107 [42 O.O. 186].

Furthermore, by omitting a specific formula in R.C. 4909.15(A)(1), the General Assembly has vested the commission with broad discretion in determining the appropriate allowance for working capital. We believe that such determination is lawfully within the expertise of the commission unless it is manifestly against the weight of the evidence and so clearly unsupported by

the record as to show misapprehension, mistake, or willful disregard of duty. See *Consumers' Counsel* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 71, 79 [18 O.O.3d 302]; *Cleveland* v. *Pub. Util. Comm.* (1982), 70 Ohio St. 2d 290, 293 [24 O.O.3d 370].

The record in this case clearly supports the commission's findings. Testimony established that Ohio Bell received advanced payment for approximately two-thirds of all services rendered. The formula normally used by the commission only accounted for one-half of the services being paid in advance. The commission, acting within its expertise, adjusted the formula to more closely resemble the situation. We find the commission's actions to be within its discretion and neither unreasonable nor unlawful.

## II

We now turn our attention to the issue surrounding the curtailment adjustment to the rates charged for vertical services, message tolls, and private line services.

A curtailment adjustment is premised on the theory that when prices for services rise, the demand for those services decreases. The curtailment adjustment herein was granted to Ohio Bell in order to compensate it for the revenues it expected to lose when the higher rates granted in this proceeding resulted in a decreased demand for service. This type of adjustment clearly violates the test-year concept.

This court has consistently recognized the strong presumption that only expenses incurred during the test period may be included in awarding a rate increase. *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153 [21 O.O.3d 96]; *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 372 [21 O.O.3d 234]; *Bd. of Commrs.* v. *Pub. Util. Comm.* (1982), 1 Ohio St. 3d 125; *Ohio Water Service Co.* v. *Pub. Util. Comm.* (1983), 3 Ohio St. 3d 1; *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91. The presumption stems from the fact that the utility company virtually prescribes the dates of the test period by the timing of its application for a rate increase.

There is no question that the curtailment adjustment reflected a post-test-year phenomenon. The test year ended on August 31, 1982 and the price increases, which were the basis for the adjustment, would not occur until after the commission's order of December 22, 1982. Therefore, any economic effect of the order would not be realized until four months after the test year expired.

In an effort to evade the test-year concept, the commission and Ohio Bell contended that the curtailment adjustment was not an expense item. They argue that the increase in rates to reflect the curtailment was an additional adjustment outside the statutory ratemaking formula.

After calculating the gross annual revenues to which the utility is entitled pursuant to R.C. 4909.15(B), the commission ordered Ohio Bell to implement rates which would generate those revenues plus the amount of the curtailment adjustment. Although the order did not characterize such adjust-

ment as an expense item, the effect of its allowance was the same. The order provided a dollar-for-dollar increase in rates equal to the amount of the adjustment. Therefore, we find no difference between the commission's treatment of the curtailment adjustment and an expense item.

Finally, the commission and Ohio Bell argue that the adjustment was authorized by certain language contained in R.C. 4909.15(D)(2) and past decisions of this court permitting exceptions to the test-year theory. However, we are of the opinion that the case *sub judice* does not fall within any of the exceptions to the test-year concept.

In *Bd. of Commrs., supra,* at 127, this court found that costs which the utility would incur after the test year to implement a line clearance program were necessary to "assure continued safe, efficient service" and we therefore allowed the adjustment. In *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 6 Ohio St. 3d 412, we upheld the inclusion in costs of pre-test year depreciation reserves, by relying heavily on the fact that R.C. 4905.18 specifically authorized depreciation reserves to be considered in fixing rates.

In the case at bar, the exigent circumstances noted in *Bd. of Commrs., supra,* are not present; nor has the General Assembly delineated the effect of curtailment as a factor to be considered in the ratemaking process. Also the phenomenon of anticipated loss of revenue due to less usage would not take place, if at all, within the test year. Thus, the curtailment adjustment does not fit into an exception to the requirement that rates be fixed based upon test-year data.

Accordingly, we affirm the commission's order as to its determination of the working capital allowance and reverse that portion of the order which allowed the curtailment adjustment.

*Order affirmed in part*
*and reversed in part.*

CELEBREZZE, C.J., W. BROWN, FORD, HOLMES, C. BROWN and J.P. CELEBREZZE, JJ., concur.

LOCHER, J., concurs in judgment only.

FORD, J., of the Eleventh Appellate District, sitting for SWEENEY, J.